The Chancellors took time to consider, and after-wards delivered, the following opinions :
X- have re-examined the grounds on which I founded-the opinion delivered by me in this ease in the Circuit Court, and X still adhere to that opinion.
(Signed) Thomas Waties;
The deed in this case is-void as such at common law, for three reasons : Because the consideration is not good ; it is made to take effect in futuro .5 and by it a fee is limited upon a fee. But as an instrument in writing, solemnly executed, this court appears bound to give it some operation. Now the doctrine is, that when a man lias expressed clearly his intention to dispose of his estate, and has taken an ineffectual mode of doing it, yet if the instruments can be construed in another manner, so as to effectuate his purpose, the ceremony is matter of form, and Iho substance shall be carried into execution, if it may by *623 law. And although this paper has the form of a deed, yetas it was intended to take effect at the death of the testator, and is ratified by liis will, it may be considered as testamentary | and thus be connected with the will, and both may make one testamentary disposition of the estate, if a testator in his will, refers expressly to any paper already written, and has so described it that there can be no doubt of the identity, and the will is executed in the presence of three witnesses j that paper makes a part of the will, whether executed or not. 2 Vez. jr. 226, 7, 8. Now the will in this-cage is duly executed, and refers so expressly to the deed, that the identity cannot be doubted. Then by the above authority, the deed forms a part of the will, and the whole is testamentary. But further, the testator devises his whole estate in fee, but limits a remainder thereon, to commence on the future contingency of the devisee’s dying without heir of his body begotten. According to this form-then it answers to the definition of an executory devise. 2 Black. 173. Fearn, 299. But it lias been objected to it, that it cannot take effect by law, as being too remote. This docs not appear so, for the devisee and the three brothers of testator, mentioned in the deed, were in esse at the time of the devise, and the contingency having now taken place., the property will vest in the children. This limitation does not embrace so much as a life, or lives in being, and twenty-one years afterwards, which is the reasonable time allowed by law.
To effectuate the intent, the court will add wordss for instance, the word issue, is more general in its signification, than the words heir of the body ; yet, to give effect to the executory devises, it will lay hold of any words in the will to confine íh» expression of dying without issue, to dying without issue living, at the time of the testator’s death. 3 Atk. 282. 1 P. Wms. 198. Fearne, 357. Then if to the words of the deed, “ should the said T. L. Winfrey die or decease without any heir of his body begotten,” should be added the words “ at the time of his death,” which are obviously to be inferred, the contingency must take effect in about nine months af *624 ter tbe death of the devisee, which does not go even to thb extent admitted by the law.
In short, upon every view of the subject which pre-scnls itself to my mind, this deed may be connected with the will so as to form one testament; and the limitation over has nothing in it to denominate it a perpetuity..
Therefore, I am of opinion, but for different reasons,, that the decree should bo affirmed.
W. D. James.
I have considered this case with great attention, having repeatedly gone over the papers, examined the arguments of counsel, and consulted the authorities cited, as well as others. This was due to the deep interest taken in this important cause by the parties interested, as well as to its intrinsic difficulties, and the ability with which it was argued. And I feel it to he proper to state the grounds on which I have formed my opinion. ,
It is manifest that Robert Lamar, the father, intended that if Iris son should die without issue, his property should go over to his brother’s children. And I apprehend it to be the duty of the court to give effect to that intention, if not contrary to some positive rule of law. — ■ But it was argued that this supposed intention, could not be carried into'cffect in the case under consideration, from the nature and wording of the deed or instrument employed by the donor; and because the limitation over was upon an indefinite failure of issue, and was therefore too remote'and void. In which case the first taker, Thomas Lamar Winfrey, would be entitled to the whole estate of his father; which his widow the respondent would take under his will.
On the first ground, it was stated that the deed or'instrument of the 1st April, 180G, executed by Robert Lamar, could not legally convey any estate to the remain-dermen, the children of Robert Lamar, because it was really a feoffment, and not a deed to stand seized to uses, or as a testamentary paper, as had been contended on the other side. That as a feoffment it was void as to the real estate, because it attempted to'transfcran interest in a *625 freehold» to take effect at a future time, to wit, on the death of the grantor, which a feoffment cannot do.'
This objection is a technical one,setup in opposition to a plain intention. And it certainly is true, that a feoffment cannot in that Character, convey an interest in a freehold to take effect in future. But it appears to me that the objection is as fatal to the appellant as to the respondent’s c|aiming under the deed: For the deed cannot, as a feoffment, convey any estate of freehold to take effect in Muró, to the son Thomas Lamar Winfrey, under whom the appellant claims, any more than it can to the remainder-men. And if the deed he ineffectual as to both, then the property would, on the death of Robert Lamar, without wife or legitimate child, descend to his brothers and their children, the present complainants,, unless it was disposed of by hia will. It was argued that the grant to the son Thomas Was direct, and the enjoy-'saent only postponed to the death of the grantor; but What ÍS this but a, deed to take effect in futuro, which we have seen cannot be done as to freehold estate by a feoff-sn ent: and if the arguments were well founded, then the limitation over could be grafted on the estate of Thomas.
It Was further contended, admitting this deed to be good and operative, that according to the rules for the construction of deeds, the limitation over to the children of Robert Lamar’s brothers, was void, because they are not mentioned in the premises of the deed, and that the habendum in which the limitation is contained, cannot pass any thing to persons not named in the premises. It would be very strict to apply a severe rule to a deed Very anskilfidly drawn. But the rule, though correctly stated, does not go so far as is supposed ; for though a man not named in the premises of a deed, cannot take a direct estate under the habendum, yet he may take an estate in remainder by limitation in the habendum; and that is precisely the case in the deeds Wihich we are considering. See 3 Bac. Abr. New Am. Ed. 395 ; Cro. Jac. 564 ; B Leon. 60; Willes 686; 1 Bos and Puller, 534.
*626 ■ Again it was contended, that if the deed should b@considered void and ineffectual as a feoffment, both as tó Thomas Lamar Winfrey, and the remainder-men, then Thomas could take the estate'under his father’s will, of the 6th May 1806, which devised the estate to him abso-. lutely, clear of all restrictions or limitations. But I think this is an erroneous view of the will; for Robert Lamar, the father, says in his will, I bequeath to my son Thomas all my lands, negroes, &c, as mentioned in a deed of gift executed by me on the 1st April 1806, which said dead be--ing agreeable to my will and-Wishes, I now absolutely and bona fide confirm the said deed of gift unto my said son, his heirs, &c. as mentioned in the said deed of gift,- and he desires that no alteration should be made in the said deed. It strikes me that this-is a complete reeogni-1 tion of the deed, not partially, but wholly and in all -its provisions j and it is as if he had repeated the words of the deed and made them a part of his will. His will does not then alter the case, hut leaves it where it found it and the limitations over to his brother’s children, (if not too remote,) are as good and effectual under the will as under the deed. - - >
If upon consideration we should be of opinion that the instrument executed by Robert Lamar on the 1st of April 1806, cannot operate as a feoffment, then the question arises whether it can be construed to . be a deed to •stand seized to uses, or be deemed a testamentary paper.
After a great deal of examination and reflection I am of opinion with the judge who tried and decided this case in the circuit, that the instrument under consideration may be so construed, if it be necessary to do so, in order to give effect to the intention of the maker. It is a leading-object with courts of justice to give effect to the intention of parties, both in their deeds and wills. — 3 Bac. Abr. 393 New Am. Edition. That great and virtuous magistrate, Lord Hale, said in the case of Pybus and Mitford, (cited in 1 Vez. sen. 153,) «that we ought to serve the intent if we can, as the best expositor we can go by.”
Lord Hardwicke hpd exactly the same difficulty in the case of Rigdon vs. Hallier, 2 Vez. sen. 252, 5; (3 *627 Atk. 731,) which we have now; that is, what he should -call and hów he should construeja paper in order to give it effect. He said, that though executed, as a deed, he was 'hot sure it was intended .to take effect as a deed. It began as a deed poll, but it was a disposition of his whole real and personal estate, and to take effect after his decease, in consideration of, &c. If this is not a will or a covenant to stand seized to uses, it. would be void, because a freehold' eannot pass in futuro 5 but being in consideration, of love and affection, it may he good by way of covenant to stand seized.
- It was insisted, however, that there was no consideration here, upon which an use could be raised, for that it had been settled that the love and affection which a father bore his natural child, was not a sufficient consideration to support a deed to stand seized, and it is certainly true, that the old cases have so decided the point. — 7 Bac. Abridged New American Edition p. 98. But I am not sure that on a review of the subject, these cases would prevail at this day. Even the old cases admit that if a man covenants in consideration of natural love and affection, to levy a fine, and that the connsee shall stand seized to the use of his bastard daughter on her marriage, this is so expressive of the intent of the party that it shall prevail. 7 Bacon, 93 , Gilb. on Uses, 207. And if the paper under, consideration be construed a deed to stand seized to uses, we ask, whai uses ? The answer is, to the uses expressed on the face of the instrument. First, for the son and his issue j Secondly to the children of the brothers: For fraternal love is a good consideration to support a deed to stand seized»*See the Cases cited in 7 Bacon’s Abr. 98 ; Roll’s Abr. 783; Cro. Car. 529.
> But if the objection should prevail that the instru> meat could not be supported, as a deed to stand seized to uses, then let us enquire if it could not be taken to be a testamentary paper. •
■ In the case before cited from 2 Vezey sen. 258, 9, Lord Hardwicke says, that .though the paper then undci* bis consideration, had been sealed finjj delivered as « *628 deed, and used the words give and grant, yet as it was declared on its face, by the maker, not to be intended if> take effect till his'death, it might well he construed a testamentary paper. See also the old cases, 1 Mod. 117; 1 P. Wms. 529. So too in the case of Ward and Turner, 2 Vez. Sen. 431, 440, 441, Lord Hardwick cites and approves several cases which he states. One was the case of Ousley Vs. Carrol, decided in 1722, by the Ecclesiastical Court. There was left a writing in presence of three witnesses, not in the form of a will but a deed, viz. “ I have given and granted and give and grant, to my five sisters, and children of the sixth, their heirs, &c. in case they survive me, all my goods and chattels and real and personal estate." And this was established, not sub silenti®, but upon a litigation, to be a testamentary paper. And in another case cited under the title of Shar-gold’s ease, there was a deed of gift by Dr. JPope, not to take place until his death, and sixpence delivered by way of symbol to the first grantee in possession, as was done and relied upon in the case under our consideration.,, This was pronounced a testamentary paper.
It was remarked by Mr. Yancey, one of the learned counsel for the appellant, that the case of Shargold was not to be found in the books, except as there cited. This is true, but the reason is that few of the decisions of the Ecclesiastical Courts in those times were published. But that case was cited and allowed in the Ecclesiastical Court by a learned judge, and Lord Hardwicke also recognized the case. See 2 Vezey sen. 442, 3.
In another case as late as 1793, Habergam vs. Vincent, reported in 2 Vezey jun. 204-208, &c. it was very solemnly decided that an instrument calling itself a deed, and executed as such, and stamped as deeds are required to be, should be construed to be a codicil to the maker’s will, in order to give effect to his intentions. This case was greatly discussed, and the lord chancellor called two of the .judges, Buller and Wilson, to his assistance, and they agreed with him, that it is not the. circumstance of the instrument being stated to be or that it is treated by {he party as a deed or will, but the intention upon the *629 tsrhole tliat it should operate before or after the death of the maker, that decides whether it is to be considered) testamentary or not, as indeed was decided in the of lords, -in Lusher Ts. Hogg. Judge Buller particularly-stated, that the cases cited, (which had escapedjiis recol-loction>»till quoted to him,) “ liad established that an instrument in any form, whether a deed poll or indenture! 'if the obvious purpose was not to take place till after the-death of the person making it, shall operate as a will. The cases for that arc both in law and equity; and in one of them there were express words of immediate grant, and a consideration to support it as a grant: But as upon the whole the intention was, that it should have a future operation, after death, it was considered as a will.” Therefore lie considered the instrument then under deliberation as a codicil, though executed by the party as a deed and called a deed.
These decisions are founded in perfect good sense,' ánd are calculated to give effect to men’s deeds and wills by preventing them from being defeated by technical objections. And these decisions apply directly to the cast? under our consideration. For Mr. Lamar, the maker, expressly declares and makes it a part of the instrument,•that it should not take effect till his death; the words are, « at my death, and not sooner.” Then we are perfectly at liberty, and indeed bound to construe this papera will, in order to give it effect $ and it having been executed in the presence of three witnesses, it will pass-the lands as well as the personal estate. Nor would it be a benefit to the appellant to refuse to take this view of the case. For as the the instrument cannot take effect as . a feoffment, it would be wholly void if wc refused to construe it either ^ deed to stand seized to uses, or as a testamentary paper: and then the complainants would take ihe.estate as next of kin ; unless the will of Robert Lamar subsequently made carried the estate to the son. But we have seen that the will recognizes, adopts, and redisposes of the property exactly as the former paper.did.
We come now to the consideration of* the last question -in this case. It is whether the limitation over to the *630 children of Robert Lanmr’s brothers in this instrument;considered in any character, is not too remote and void, after a gift to the son Thomas, his heirs, &c. Thehaben-dum is in the following words: “To have and to hold all the said lands and tenements, negroes, &c. (at my death and not before,) to him the said Thomas Lamar Winfrey, his heirs, executors or administrators, from thenceforth as his proper lands, goods and chattels, absolutely, without any manner of condition, forever, exceptthe following,' that is to say, that should the said Thomas Lamar Winfrey die or decease without-any heir of his body begotten, then and in that case or event, the whole, of .the then remaining property above mentioned, shall in that case bo equally divided .between the children of my three bro--thers, viz. Thomas Lamar, Philip Lamar, and James Lamar, in equal proportions amongst them all.”
It lias been so generally understood that the intentions of donors and testators are frequently defeated by the application of the technical rule on this subject, that the constant leaning of the court is to narrow its application; in order to give effect to the intention. Still however the rule cannot he set aside.: It must prevail in all eases where a fair interpretation of the instrument shews that the limitation over is not to lake effect, till an indefinite failure of the issue of the first taker. And generally speaking, deeds to uses arc not construed in greater latitude than the common law conveyances, as to words óf limitation. But where there are words of regulation or modification of the estate, (as the words equally to ho divided are,) and not words of limitation, Lord Xlard-wicke said he did not think there was any harm in giving them greater latitude in deeds'on the statute of uses, which are trusts at common law, than.on feoffments, which are strict conveyances at common law. — 2 Vez. sen. 257.
If wc look carefully at the provisions of the instrument under consideration, it docs not strike me that there is any thing which indicates an intention, that there should he an indefinite failure of the issue of the son, ■ upon which the limitation should take effect. Mr. Robert Lamar seems to me to look only to -the actual time o¿ *631 ufe death of bis son, without leaving issue then alive.' — . The words are, “ should the said Thomas Lamar Win-fry die or decease without any heir of his body begotten,’’ then and iii that case he makes the limitation to his brothers’ children. I think it is manifest from these words that he meant to provide no further than for the state of things at his son’s death : and if so then it is clear the limitation is not too remote. So too the limitation is to his brothers’ children, equally 4o be divided among them. This furnishes a very strong presumption that Robert Lamar was not looking to an indefinite failure of the issue of his son, but to the state of things at his death.— The limitation is to persons who were in esse, or who might be so during the life of the son, the -first taker.
I do not think it is necessary now to go into a full examination of the doctrine of limitations, as illustrated by the decided cases. It was very elaborately examined in the case of Clifton, administrator of Campbell vs. the éxecutors of Ilaig, executor of Wise, decided in the circuit court of Columbia, in June 1812, and, the decreé was affirmed by the court of appeals. I think the doctrine then recognized by the court, applies to this case, and will support the limitation ; even if the limitation should be construed strictly, as in common law conveyances.
Upon the whole, after the best consideration which :I Lave been able to give this cause, I am of opinion that the decree of the judge of the circuit court was. correct aud ought to be affirmed.
Henry W. DesaUssure,
It is therefore ordered and- adjudged, that the decree, of the circuit court be affirmed.
Henry W. Desaussu^k.
Thomas Waties.,
W. D. James.
As this is a case of-construction, it is necessary tb determine whether the instrument under which it arises, should be considered as testamentary, wills being more jibcrailv construed thfm deeds;
*632 A paper signed, sealed and delivered as a deed, may taken as a testamentary paper, but then if must be intended not to have effect until the death of the maker, and this construction of the deed is resorted to, to carry the intention into execution. In this case the instrument is a deed to which Robert Lamar intended to give effect* and which took effect on its delivery. This intention is evident from the .delivery of the deed itself, and of the ■saddle as possession of the property. The deed conveyed ah immediate interest with a present fixed right of futuro enjoyment, and did not stand in need of any further act on the part of Robert Lamar for its completion. His death was merely the period appointed for the exercise of the right previously transferred by the deed, and had Robert Lamar after the delivery of it been disposed to revoke it, it was not in his power to do it.-The deed is said to be void as a feoffment, as far as it relates to the real éstate, as an estate in freehold cannot be; created to commence in futuro, but it ought to take effect' presently, either in possession or remainder, because at common law no freehold in lands could pass without livery of seisin which must operate either immediately or not at all. — 2d Blackstone.
As a covenant it is said not to be good, love and af-ection for a bastard child not being a sufficient considera- « íion upon which a use can be raised. — Fonblanque.
The deed was confirmed by the will of Robert Lamar, at whose death Winfrey either took or was already in possession of the property, and the widow of Winfrey who now holds it, does not apply to this court for its aid, or to supply any defects in the deed. It is clear that Robert Lamar intended to give the property to Winfrey, and if the mode ho has taken to do it, be ineffectual,, the court will find some other to give effect to his intention.; for it is well settled that deeds shall operate according to the intention of the parties, if by law they can. Lamaj’ might make the provision he did for Winfrey; by his conduct to him he had raised expectations in him, and he was besides bis son. In making the deed he discharged a moral obligation, end the widow of Wipfray being in *633 possession of the property under the deed, may set it up as an agreement of Lamar’s which has been executed. And her case is stronger than if she came into this court seeking its aid, for the court will sometimes not set aside agreements of which it would not hare decreed a specific performance. The question is, whether the limitation to the children of the brothers of Lamar be good ?
There arc many cases in which a limitation over, after a dying without issue or without- heirs, has been held bad, but this court believing that where there are limitations over, testators generally intend by their words issue or heirs living at the death of the first taker, has -anxiously laid hold of any circumstance or expression in the will, to give this construction to them, and latterly has gone so far as to leave it doubtful, whether without any circumstance or expression in the will, ex vi termini, it would not construe a dying without iss.ue or without heirs, when there is a limitation over, in the restricted sense.
The intention of a testator is highly regarded, and in favor of it a very liberal construction is allowed, as may ho seen by the cases of Whalley against the executors of Whalley, and of Campbell and wife. But the same liberality of construction extended to deeds -would unsettle the foundations upon which the title to property rests, • and instead of the security of private rights, which an adherence to old pre-established rules of adjudication affords, would introduce an uncertainty, destructive of •uniformity of decisions and pregnant with mischief. We know what the law is now, but we-shall not know what it is, if we discard technical rules in the construction of legal instruments. ' -
‘ A conveyance of an estate to a man forever, is as indicative of an intention to give him a fee simple, as a -conveyance to him and his heirs ; yet the construction is different and it is right it should beso, for it is wise and better that a particular hardship should, sometimes be sustained, and that the intention of men not properly expressed in deeds should fail, than that the settled landmarks of property should be disturbed.
It was argued that the habendum in the deed is re *634 pugnant to tbe premises, and void. Í say nothing on this-point, because if tbe limitations to the complainant be too remote, there is an .end of their claim.
The whole of the personal property will vest in. the' first taker, and it is immaterial to tbe complainants what estate in the lands passed. Tbe case of Tilbury vs. Ban-hut, 3 Atkins, is much like this. Dr. Tilbury devised all his real and personal estate to his wife for life, after her death to his son John, a younger brother of the plain--, tiff’s by another ventor, and his heirs forever. And in caso of the death of John Tilbury without any heir, then his real and personal estate devised to his son John, shall go and be enjoyed by his son Cornelius the plaintiff.— This was held to be a void devise.
I am of opinion that the limitations to the children of 'Robert Lamar are too remote.
Theodore Gaiexakb.
Robert Lamar being seized and possessed of a large real and personal estate, and having no legitimate lineal descendant, by deed bearing date the first day of April, 1806, gave the same to his illegitimate son, Thomas Lamar Winfrey, and his heirs, executors, and administrators, with a proviso, that if Thomas Lamar Winfrey should die without issue, then, and in that case, he gave it to the present complainants, who were the nephews and nieces of the said Robert. The deed was delivered in due form to the donee, as was also apart of the personal property, as symbolical of a delivery of the whole 5 but the absolute and uncontrollable power over it was postponed, until the death of the said Robert, The parties to the deed lived together for several years, and enjoyed indiscriminately a community of the profits of the estate. Some time after the death of .Robert Lamar, Thomas L» Winfrey died,leaving a widow and 110 issue, and the present controversy is between her and the complainants in the court below-. In the discussion of this case, throe distinct and unconnected grounds were relied on, on the part of the appel-lees : — -First, that the instrument was a testamentary pa--]>cr; secondly, that it was a covenant to stand seized to *635 lisos; thirdly, that if it was neithe;', it was a nullity, and the property would revert to the heirs of the donor.
The circuit judge seemed to discard the idea of its' being a testamentary paper, and I fully accord with him in that opinion. I cannot consider an instrument testamentary which possesses not a solitary ingredient of a will, or which is not made in contemplation of death, or has some propinquity of execution with a will. A will never conveys an immediate interest, which this instrument does: for although it is not necessary to a deed that the interest should be taken possession of at the time of, the execution, it must be considered as passing it at that time 5 in a will it is otherwise. And further, a will is essentially revocable, which this instrument was net-after its execution and delivery.
But admit that under any possible circumstances this could be considered in the light of a testamentary paper, still the complainants could not recover under it. It is the. creation of an estate in fee tail, and the statute de donis conditionalibus, not being of force in this state, the particular estate, upon which the limitation over is supported, failing, the limitation also must fail, and the donee hold in absolute fee simple.
The second ground is, that it is a covenant to stand seized, &c. A covenant to stand seized is bipartite. It .is where a man, seized of lands, covenants that he will stand seized of the same in consideration of blood or marriage, to the use of his child, wife, or kinsman for life, in tail or in fee. This species of conveying real estates originated in fraud. It deprived the lord of ail his feudal rights, tenants of their leases, and creditors of thc.ir just debts. It was in general use during the time that England was engaged in her long wars with France, and subsequently, while the controversy between the Houses of York and Lancaster convulsed the nation j but alter the salutary act of the 27th Henry YIÍI. C. 10 was passed, which obviated almost all the fraudulent purposes for which it had been invented, it sunk into disuse, and I doubt whether it ever found its passage to this country. The mode of transferring property by the ancient form *636 of bargain and sale, and testamentary devise, has becit found to be fully competent to all honest purposes ; and I should be reluctant to innovate on good institutions for speculation and visionary schemes, invented by subtilty, and predicated on fraud.
I cannot, for my part, sse the least resemblance in form, substance, or legal operation, between the deed in question, and a covenant to stand seized. JBut suppose it could be viewed in this light; it is still the creation of an estate in fee tail, and liable to the same objections as have been mentioned under the former head. — With regard to the third point it requires no comment.
The paper in question possesses all the requisites of a deed at common law. It is in writing. It is between parties able and willing to contract, in contemplation of law. It is for a good and meritorious consideration. The donor had no legitimate descendant; and, independent of the ties of affection, (which the stern laws of morality would deny a father to hear towards his illegitimate offspring,) it was more incumbent on him to provide for one whom he had been the cause of ushering into the world, with tiie legal inconvemcncies and reproach inseparable from a person of that description, than to bestow his fortune on co-i’clativcs, who may have been in affluence, and regarded him with a view only to the ultimate enjoyment of his property.
It possessed another essential agreement of a common law instrument. It was signed, sealed, and delivered in presence of witnesses, which was a complete consummation of all the law required. It is further to be observed, that Robert Lamas* himself calls it a deed of gift upon the face of it; and frequently in his will, which was executed several years afterwards, denominated it “ a deed of gift.” I cannot therefore see the necessity of the ,<;ourts endeavoring to find out another name for it than the one which was used by the maker, for the purpose of subjecting it to a different legal construction.
I am therefore of opinion, that the deed is a complete common law instrument, liable to legal construction as such ; that the limitation over is too remote : that the de- *637 orce should be reversed, and that the hill should be dismissed with costs. ' W. Thompson.
Afterwards two other questions were made in the cause for the consideration of the circuit court. It was contended, on the part of Mrs. E. Lamar, the widow of Thomas Lamar Winfrey, that she was entitled to dower in the real estate in question, and also to the issue of the female slaves born before the death of her husband.
These questions were argued before chancellor De-saussure, who delivered the following decree.
Robert Lamar executed an instrument, by which, in consideration of the natural affection he bore his son, Tilomas Lamar Winfrey, (son of Judith Winfrey, deceased, to whom he was not married,) he gave and granted to the said Thomas, his heirs, &c. all his real estate; and also his negro slaves, whom he names, but says nothing of the issue of the female slaves ; also his stock, &c.. of all which Robert Lamar says, I have delivered the said Thomas one saddle, as possession of the whole ;— to have and to hold the said property (at the death of the said Robert, and not' before) to the said Thomas, his heirs, &c. without any condition, except that should the said Thomas die without any heir of his body begotten, then, and in that case, the whole of the then remaining property should bo equally divided among the children of his brothers, Thomas, Philip, and James Lamar, in equal proportions. Robert Lamar died without leaving a wife or any legitimate issue, but leaving alive his said natural son Thomas ; and the said Thomas Lamarlcfta last will and testament duly executed, by which he confirmed the said instrument. Thomas, the son, took possession of the estate, and enjoyed the same till his death. He left a widow, but no lawful issue. In a former stage of this case it had been decided, that the instrument executed by Robert Lamar, took effect as a deed to stand seized to uses, or as a testamentary disposition, and that upon the death of the said Thomas Lamar Winfrey, “ without any heir of his body begotten,” the children of the three brothers of Robert Lamar became entitled to the estate. It *638 jg jjow contended that the complainant, the widow of 'Tilomas Lamar Winfrey, is entitled to dower in the lands,. and to the issue of the female slaves, comprehended in sa^ instrument, who were born after the execution there* of, ami before the death of said Thomas.
To the claim of dower it was objected, that Thomas' had not such an inheritable interest in the lands as entitled bis widow to dower. But Í am of opinion he had. The limitation is to him and to his heirs; but if he died without ■an heir of his body begotten, then over to the brothers’ children.
If he had had an Iieir of his body, he would have inherited. Now the text of Lyltioton is express, that where a woman taketh a husband seized of such an estate, in tenements, &c. so that any issue she might iiave by him may by possibility inherit the said tenements, of such cs-fate as the husband hath, she shall have, her dower ; otherwise not. See Litt. §53. As then the issue Mrs. Lamar might iiave had by the said Thomas might have inherited, she is entitled to dower. The widow of a tenant in tail, it was conceded, would be entitled to dower. And so, in my judgment, is the widow of a tenant in fee conditional at common law.
But a more serious objection to the claim of dower exists, it is that a widow is not dowablc of a trust estate : and that this was construed a deed to stand seized to uses by the court. There is no doubt that the decided cases have settled the point too long and too firmly to be shaken, that a widow' is not dovrable of a trust estate. — See 3 P. Wms. 229, Chaplin vs. Chaplin ; Cases Temp. Talbot, 138; Attorney General vs. Scott; 1 Bla. Rep. 138, 161; Burgess vs. Wheat, 2 Atk. 525 ; Godwin vs. Winsmore, and Dixon vs. Saville, 1 Bro. C. C. 326.
But it does not necessarily fallow, because the court construed this instrument to he a deed to stand seized to uses, (¡¡order to give effect to the intentions of the maker of it, that it must be so construed to all intents and purpose's. It is really a gift direct to the son, without the intervention of trustees, or the formal creation of a 'trust estate. But as it was not to take effect till the dp'- *639 aor’s death, and therefore could not take effect as a common law instrument, the court in the anxiety it always feels to fulfil the intention of the parties, construed the instrument a deed to stand seized to uses for that purpose. And it would be very unwilling to attach to an instrument so construed for such a purpose, the quality of a trust estate so completely as to fasten upon it the application of an artificial rule, which would go to defeat the widow of dower. But if the privation of dower must necessarily follow the construction of the deed to be a deed to stand, seized to uses, then I shall resort without hesitation to the other gTound on which the court proceeded, which ■was to consider this paper as testamentary.
The cases cited in the former decree of the court fully warranted that opinion, and I think the widow- is entitled to the benefit of it. And I am the more satisfied with this determination, because the will of Mr. Robert Lamar confirmed the instrument, and its authenticity may be made to rest upon that confirmation, as itself an effective disposition. The result of this reasoning is, that I feel bound to allow the claim of dower.
The other claim made on behalf of the widow is, that she is entitled, (as the legatee of her husband,) to the issue of the female slaves, named in the instrument, who were born before her husband’s death. This point was fully and ably argued, and I have considered the question very maturely. Slavery in a modified form existed in England, under the denomination of villeinage ; but it was nearly fallen into disuse at the time of the settlement of the colonies, and completely so, before the settlement of South Carolina. The last case of villeinage reported in the books, is that of Crouch, in the 10th of Elizabeth. See Dyer 268. And villeinage- was abolished by the -stat. of 12 -Car. 2d. We are not, therefore, to look to the common Jaw for rules for tlie regulation of that species ■of property. By our colonial statute of the loth May 1740, it was enacted that the issue should follow the condition of tho mother. This was a plain departure from, the common law in relation to the villeins $ for by that Taw the issue followed the condition of the father, whe *640 ther bond or free. The text of Littleton, § 187, is pve-cise to that point, — See too 2 Bla. Com. 93, 4. This provision of the common law is noticed by Lord Coke to be the reverse of the civil law, the rule of which was, that partus seqnitur ventrera. Our statute hath then adopted the civil law rule : and Mr. Cooper in his Notes on the Institutes, remarked that it was the same in Pennsylvania. See Cooper’s Justinian, p. 479. Enquiring then into the rights acquired in that species of property, it seems to be proper to resort to the civil law, which according to Sir William Jones, is the true source of nearly all the English laws that arc not of feudal origin.
The question to bo examined is, who is entitled to the issue of female slaves, where there is no positive disposition made; the tenant for life, or any other particular estate, (the usufructuarias,) or the remainder man or reversioner, (the proprietarius,) l
Biackstonc says, the usus fructus of the civil law was, the temporary right of using a thing, without having the ultimate property or full dominion of the substance, and Bomat agrees with him. See book 1, tit. 11, §1,1 vol. 183, 4, &c.
Cicero says that the question whether the offspring of female slaves belonged to the usufructuary was formerly much discussed among the jurispru(lists, among whom there was then some difference of opinion : Scoe-Tola and Manilius differing therein from Brutus.
To this passage there is supposed to bo an allusion in the Pandects, where it is said, it was formerly a question whether the issue of female slaves belonged to the usu-fructuary ; but Brutus’ opinion has prevailed, that the usufructuary has no property therein. For man cannot be considered as the profits of man ; for which reason the usufructuary shall have no usufruct therein; unless indeed such usufruct be specially bequeathed; for in that case, as the testator might have given the issue or offspring itself, he certainly might give the use and profits of it.. — .Digest, lib. 7, title 1. Aral in another passage it is more distinctly stated. The profits of cattle will comprehend not only milk, hair and wool, but also the *641 young thereof. Therefore lambs, kids and calves become immediately the property of the usufructuary. But the issue of a female slave makes no part of the-profits, (in fructu non est,) but belongs to the ultimate proprietor, (ad dominum proprietatis pertinet.) Digest, lib. 22, tit. 1.
The text of the Institutes lays down the rule almost in the same words: “ Among the produce of animals we not only reckon milk, skins and wool, but also their young; and therefore lambs, kids, calves, colts and pigs, appertain by natural right to the usufructuary ; but the offspring of a female slave cannot be thus considered, but belongs to the proprietor of such slave.” See Cooper’s edition of Justinian’s Institutes, lib. 2, tit. t, § 37; Voct. ad Band. lib. 7, tit. 1, notices an.d remarks or this rule of the civil law. And Yinnius in his commentaries on the Institutes, states it as the settled doctrino, that the offspring of female slaves is not to be considered as part of the profits, nor as belonging to the usufructuary, but such offspring belongs ip the proprietor, (ad domi-iium proprietatis.) — lib. 1, tit. 1.
In making up a definitive judgment on .a question which is to affect not only the rights of property to a great extent, (for cases of this kind must be perpetually recurring,) but which must also have an influence on the comfort of the unhappy beings who are the subject of discussion, one cannot prevent the considerations of humanity from mingling in the judgement. It is ailedged on the one hand, that if the right of property in the issue be not given to the usufructuary, he would not be led by the strong temptation of interest, to take care of the helpless infants, who would rather be burthensome and expensive to him for many years, besides the loss of service of the mother during her pregnancy, and some time after: — . whence it is inferred that humanity would be promoted by bestowing the right of property on the usufructuary.
On th.e other band it is ailedged, that if the absolute right of property be decided to be in the usufructuary, and that the issue of the females shall not go oyer to the remainder man, or ultimate proprietor, there will'be a cruel *642 am] patniijj ,sc|k,ration ox the children, even those at' ^le ^1'cas^’ from their parents.
There is weight in both views of the case; but there is more I think in the latter. The separation would bo * a great ana certain evil. The want of care m the usu-fructuary, if deprived of the absolute, right of property in the. issue, might occur in a few cases; but we- may trust in general to the humanity of the possessors, and more to the. attention of the mothers themselves. On this ground then, I think the consideration of humanity is in favor of the adoption of the civil law rule. To this it may be added, that the remainder-man, who is ultimately to be the absolute owner of the estate, and is usually the main object of the bounty of the testator or donor, would, if the intermediate estate should be protracted considerably, as is frequently the case, receive only an infirm and broken set of laborers, if the usufructuary were to keep the issue.
This subject has been before the courts of America, but the decisions have been different in the different states. In Maryland it has been adjudged that the legatee of slaves for life, is entitled to the issue born during the life estate. — Scott vs. Dobson, 1 Harris and M‘Hen:ry’s Reports, 160. In North Carolina the contrary doctrine has prevailed, and the issue is adjudged to go over with the parents to the remainder-man. See the case of Glasgow vs. Flowers, 1 Haywood’s Reports, p. 233, in which the ca.se of Tims vs. Potter is cited, and slated to have established the law.
The question has scarcely ever been brought directly before our own state courts, though the case must have occurred frequently. The late chancellor Rutledge stated, that he had never been called upon to give a judicial opinion on the question in twenty years that he had been on the bench, which he attributed to its being generally understood, and acted upon iix the country, that the issue were to go over with the parents to the remainder-man -. and he considered this understanding and usage to be correct.
*643 I concur in that opinion on principle, and on the. 'doctrine of the civil law, which furnishes more apposite examples for the determination of questions respecting •«laves, than the common law principles respecting villeins. And where there is no statute law on the subject, Í consider the silent uncontroverted usage of the country, as going far to establish the rule; which therefore ought not to he shaken without the clearest conviction that it is radically erroneous. I feel no such conviction, but quite the contrary : and Í am satisfied upon mature considera», tion, that it is most consistent with justice, policy and humanity, that the issue should not belong to the tenant of the intermediate estate, (the usufructuary of the civil law,) but should go over with their parents to the remain» der-man or reversioner, the proprietarius of the civil la'., v
An attempt was ingeniously made to shew a distinction between cases where the right to the slaves was vested in tiie remainder-man, and where not so vested. And it was argued, that as the provisions of the instrument under consideration, gave an inheritable, estate to Thomas Lamar Winfrey, with merely a contingent estate in the remainder-man, dependant on the happening of an uncertain event, the death of the said Thomas, without an heir of his body begotten, this was a case in which the issue of the female slaves born during the continuance of Tho. Lamar’s estate, ought to be adjudged to belong to him, and to his legatees and representatives.
This argument struck my mind at first with some force, and it certainly makes as strong a case as can be made for the intermediate tenant, or fructuarias. But upon the best consideration 1 have been able to give it, it does not appear to me to vary the question so materially as to alter my opinion. For after all, Thomas had not the absolute estate, the dominion o\er the property : — If he died without issue, it was to go over to others. This has happened — his estate is defeated and terminafi d, and the property goes over to the remainder-men. I think they are entitled to the issue, and that the bill must be dismissed as to that property. But I shall he quite •satisfied that the complainant should carry up this qties’-.' *644 fion to the court of Appeals. It is of sufficient importance and difficulty to induce the most scrupulous counsel to pursue that course.
With respect to the dower, it is ordered and decreed, that a writ for the admeasurement of dower do issue inr this case, and that-=---— -be commissioners to assign to Eliza A. Lamar her dower in the lands in contest between the parties, or to assess her the value thereof. Such allotment or assessment to be subject to the future order of the court, as a security for the restoration of certain parts of the estate ailed,ged to have been carried out of the jurisdiction of the court by the said E. A. Lamar.
IlfiliEY W. Besaussuke.
From this decree an appeal was made on the following grounds:
.Robert Lstfnar executed an instrument by which, in consideration of natural love and affection, he gave to Ids natural son, Thomas L. Winfrey, his real and personal estate. To have and to hold the said lands, &c. at his death, and not before, to the said Thomas L. Winfrey, his heirs, &c. without any condition, except the following, that is to say, that should the said Thomas L. Winfrey die or decease without any heir of his body, lawfully begotten, tiffin and in that case or event, the whole of the then remaining property should be equally divided between the children of bis brothers, Thomas Lamar, Philip Lamar and James Lamar, in equal proportions among them all. Robert Lamar died without leaving any lawful issue or wife to inherit. Thomas L. Winfrey likev/ise died without any lawful issue. Some time after the death of Thomas L. Winfrey, a bill was filed by those in remainder for partition, and a decree given in their favor by the circuit court, and confirmed by the court of appeals. At the court of equity at .Edgefield in Jude term last, a motion was made by the solicitor for E. A. Lamar, the defendant in partition, by the consent of the complainant’s solicitor, for leave to enter an order that a writ of admeasurement of dower should issue, in *645 favor of E. A. Lamar, widow of Thomas L. Winfrey, and the question of right argued before the court. The court granted the order, and decided in favor of her claim of dower. This is an appeal from that decision, and the defendants in dower contend that she is not entitled to dower.
Simkins and McDuffie for appellant.
This appeal was argued at Columbia, and the Chan-eellors Desaussure, Gaillard, Watics and James, unanimously affirmed the decree of the circuit court.
Ellison and Standing for complainants. — McDuffie," Yancey and Goodwin for defendants,-
First, — Because the estate in the lands held by the husband, was a fee simple conditional of which they contend a wife is not dowable.
Second,' — That the statutory provisions in favor of the wife, and alterations in the policy of this country, and the rules of descent, have materially altered the reasons of the English law, on the subject of dower.
Third, — That Thomas L. Winfrey was considered by the court as holding under a covenant, to stand seized to uses, and a wife is not dowable of a use or a trust.
Ellison, solicitor for defendants in dower.
RobcrtLamarby a deed, subsequently confirmed by his will, gave to Thomas Lamar, the husband of Eliza A. Lamar, amongst other things certain negroes, <f to him and his heirs forever,” in the premises. In the ha-bendum he gives it to him and his heirs forever, without any manner of condition, except the following; that if Thomas Lamar should die without an heir of his body begotten, then they are limited to other persons. The point submitted to the court was, whether the issue of tiie negroes, born during the life of Thomas Lamar, who died without issue, go to his representatives or the persons in limitation. The presiding judge decided in favor of the persons in limitation, from which decision the defendant appeals, and moves to reverse it.
Because Thomas Lamar had such an estate as entitled him to the issue and they of course go to his representatives.